AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3-19 MJ 650
3619 CHARLOTTE MILL DRIVE, MORAINE, OHIO )
INCLUDING ALL OUTBUILDINGS, CURTILAGE AND )
VEHICLES AND THE PERSON OF JOVAN HOUSE )

**APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | distribution of controlled substances |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

TFO JASON BARNES, DEA
Printed name and title

Sworn to before me and signed in my presence via facetime.

Date: 11-1-19

_____
Judge's signature

City and state: DAYTON, OHIO

SHARON L. OVINGTON, U.S. MAGISTRATE JUDGE
Printed name and title

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is:

a. <u>3619 Charlotte Mill Drive, Moraine, Ohio</u> is a tan with brick bi-level single-family detached residence facing south on Charlotte Mill Drive. The front door is in the center of the face of the residence. There is a window to the right of the door. There is a glass storm door covering the front door of the residence. On a black mailbox near the street are the numbers "3619" in gold.



The property includes all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located in the residence or on the property on which the residence is located.

Person of Jovan House, Black Male, 5'9", 235 lbs. DOB: 07-19-1979





2

## ATTACHMENT B

### PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. § 841(a)(1), including, but not limited to:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long-distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses, and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, and money counters.

F. Cellular telephones, including all associated telephone records and stored electronic data that may be used in the commission of these offenses;

G. United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to, stocks and bonds.

H. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

I. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

J.  Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat-sealing equipment.

K.  Firearms and ammunition.

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Jason M. Barnes, a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am an "Investigative or Law Enforcement Officer" of the DEA within the meaning of Title 21, United States Code, Section 878. That is, I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. I have been employed in law enforcement since December 2001. I currently serve as an officer with the Dayton Police Department ("DPD"). I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau. I have been a TFO with the DEA since January 2019. I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs, and gun-related offenses. I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

3. Along with other agents and TFOs of the DEA and other agencies, I am currently involved in an investigation of JOVAN HOUSE ("HOUSE") for distribution of narcotics, in violation of 21 U.S.C. § 841(a)(1). This Affidavit is submitted in support of an Application for a

1

Search Warrant authorizing the search of the premises described more particularly in Attachment A – namely, **3619 Charlotte Mill Drive, Moraine, Ohio** (the "TARGET RESIDENCE") – for the items described in Attachment B.[1]

4. As outlined below, there is probable cause to believe that drug-trafficking crimes – including distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1) – are being committed, and that evidence, fruits, and/or instrumentalities of these violations are presently located in the TARGET RESIDENCE.

5. I make this Affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and information I believe to be reliable from the following sources:

    a. Oral and/or written reports about this investigation and other investigations from federal agents and agents from state and local law enforcement agencies;

    b. Laboratory reports;

    c. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

    d. Information developed from confidential sources;

    e. Law enforcement databases;

    f. Public records; and

    g. GPS location data received from court-authorized search warrants.

This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not contain all facts known to me regarding this matter. The communications and conversations described in this Affidavit have been summarized, paraphrased, and/or synthesized and have not necessarily been recounted in full or verbatim.

---

[1] Attachments A and B are incorporated herein by reference.

## FACTS SUPPORTING PROBABLE CAUSE

1. Based on the facts set forth below, I submit that there is probable cause to believe that the TARGET RESIDENCE presently contains evidence of drug-trafficking crimes.

2. In April 2017, the DEA Dayton Resident Office developed information from a confidential source ("CS-1")[2] that HOUSE was distributing kilograms of heroin, fentanyl, and cocaine in the Dayton, Ohio area. CS-1 stated that HOUSE drove multiple vehicles and used multiple locations to traffic drugs, including 108 North Trenton Street in Dayton, Ohio. CS-1 also indicated that HOUSE was aware of his surroundings and watched for law enforcement. CS-1 stated that HOUSE drives numerous vehicles and is associated with multiple locations in an attempt to elude apprehension and detection by law enforcement.

3. I have researched the address of 108 North Trenton Street on the Montgomery County Real Estate Tax Information website. As of September 13, 2019, HOUSE was listed as the owner of the residence at that address. According to the website, he has been the owner since October 14, 2016.[3]

4. Beginning in April 2018, Detective Sean Humphrey of the Montgomery County Regional Agencies Narcotics & Gun Enforcement Task Force received information from another confidential source ("CS-2"), who is now deceased, that an individual named "Javon" (also known as "Huleo") was selling large amounts of fentanyl, carfentanil, heroin, marijuana, and

---

[2] The information CS-1 has provided about HOUSE has been credible and corroborated in part through independent investigation. CS-1 has been working for law enforcement for consideration in an open criminal matter.

[3] The website spells HOUSE's first name as "Javon," but the quitclaim deed for the property, which is accessible through a link on the website, spells HOUSE's first name as "Jovan" and provides a mailing address for HOUSE – 526 Leland Avenue, Dayton, Ohio 45417 – that is the same as the address listed in HOUSE's criminal history, prior records in the Montgomery County Court of Common Pleas, and the Ohio Law Enforcement Gateway ("OHLEG") detail for a Ford Escape registered to HOUSE.

3

crystal methamphetamine. CS-2 stated that "Javon" had a house on North Trenton Street and was staying at the TARGET RESIDENCE.

5. On May 8, 2018, Detective Humphrey observed a black male exit the front door of the TARGET RESIDENCE, enter a black 2013 Ford Escape bearing Ohio license plate HKQ1568, and leave the area. Detective Humphrey learned through OHLEG that the Ford Escape was registered to HOUSE. Based on the photo of HOUSE on OHLEG, Detective Humphrey was able to determine that HOUSE was the black male he saw exit the TARGET RESIDENCE and enter the Ford Escape.

6. I have researched the black 2013 Ford Escape's license plate – namely, Ohio license plate HKQ1568 – on OHLEG. Based on this research, I have learned that the vehicle associated with that license plate is a black 2013 Ford Escape registered to HOUSE. According to OHLEG, HOUSE was still the registered owner of the Ford Escape as of September 13, 2019.

7. In March 2019, CS-1 provided additional information about HOUSE. CS-1 stated that HOUSE currently had two cellular phone numbers: (937) 974-3664 and (937) 607-4987. In June 2019, CS-1 confirmed that HOUSE still had the same two phone numbers and further stated that HOUSE was using the residence at 1010 Angier Drive in Dayton, Ohio to traffic heroin, fentanyl, and cocaine.

8. During the period from mid-July 2019 to late October 2019, CS-1 and law enforcement conducted a series of five controlled purchases of suspected heroin/fentanyl from HOUSE at 1010 Angier Drive. The controlled purchases were arranged through phone communications between CS-1 and an individual believed to be HOUSE who was using the number (937) 607-4987. Prior to the controlled purchases, law enforcement met with CS-1 at neutral locations, searched CS-1 and CS-1's vehicle for contraband, and provided CS-1 with

recorded buy money to purchase the heroin/fentanyl from HOUSE. During the searches of CS-1 prior to the controlled purchases, no contraband was found. Law enforcement also searched CS-1 for contraband after the controlled purchases. Law enforcement conducted surveillance during each of the controlled purchases.

9. The first controlled purchase occurred in mid-July 2019. Prior to the controlled purchase, law enforcement conducting physical surveillance saw HOUSE leave the TARGET RESIDENCE and enter the Ford Escape, which was parked in the driveway. Law enforcement shortly thereafter saw the Ford Escape pull into the driveway at 1010 Angier Drive and HOUSE emerge from the vehicle and go into the residence. Law enforcement subsequently saw CS-1 arrive at 1010 Angier Drive and go into the residence. Sometime thereafter, law enforcement saw HOUSE and CS-1 leave the residence at 1010 Angier Drive. HOUSE departed the area in the Ford Escape, and CS-1 drove off in the vehicle in which CS-1 had arrived.

10. Law enforcement followed CS-1 to a neutral location and collected a bag of suspected narcotics from CS-1. CS-1 told law enforcement that HOUSE had pulled the bag of suspected narcotics from his person and sold it to CS-1 inside the residence at 1010 Angier Drive. The bag was later submitted to the DEA North Central Laboratory for analysis and found to contain approximately 7.2 grams of a substance containing fentanyl, cocaine, and fluoroisobutyrylfentanyl.

11. The next controlled purchase occurred in early August 2019. Prior to the controlled purchase, law enforcement conducting physical surveillance observed a maroon 2002 Chevrolet Silverado bearing Ohio license plate HJY7062 sitting in the driveway at the TARGET

RESIDENCE.[4] Law enforcement saw the Chevrolet Silverado pull away and identified HOUSE as the driver. At some point thereafter, law enforcement observed the Chevrolet Silverado bearing Ohio license plate HJY7062 pull into the driveway of 1010 Angier Drive. Shortly thereafter, law enforcement observed the Chevrolet Silverado depart from 1010 Angier Drive. Sometime later, law enforcement observed the Chevrolet Silverado return and saw CS-1 get into the passenger side of the Chevrolet Silverado while it was parked in the driveway of 1010 Angier Drive. Sometime prior to CS-1 getting into the Chevrolet Silverado, CS-1 had been inside the residence of 1010 Angier Drive. CS-1 was then seen exiting the Chevrolet Silverado and leaving the area.

12. Law enforcement followed CS-1 to a neutral location and collected a bag of suspected narcotics from CS-1. CS-1 told law enforcement that HOUSE had pulled the bag of suspected narcotics from his person and sold it CS-1 while CS-1 was inside the Chevrolet Silverado. The bag was later submitted to the Miami Valley Regional Crime Laboratory ("MVRCL") for analysis and found to contain approximately 27.69 grams of a substance containing fentanyl, cocaine, and fluoroisobutyrylfentanyl.

13. After the early August 2019 controlled purchase, law enforcement periodically drove past the addresses associated with HOUSE. On August 9, 2019, law enforcement drove past the TARGET RESIDENCE and observed both the Ford Escape and the Chevrolet Silverado parked in the driveway.

14. The next controlled purchase occurred in late August 2019. Prior to the controlled purchase, law enforcement conducting physical surveillance observed the Ford Escape

---

[4] I have researched the Chevrolet Silverado's license plate – namely, Ohio license plate HJY7062 – on OHLEG. The vehicle is registered to HOUSE. As of September 13, 2019, HOUSE is still the registered owner.

6

sitting in the driveway at the TARGET RESIDENCE. Law Enforcement saw HOUSE leave the TARGET RESIDENCE and enter the Ford Escape. Law enforcement saw the Ford Escape pull away. It is believed that HOUSE went to another location to obtain additional drugs. At some point thereafter, law enforcement observed the Ford Escape pull into the driveway of 1010 Angier Drive. Law enforcement observed CS-1 get into the passenger side of the Ford Escape while it was parked in the driveway of 1010 Angier Drive. CS-1 was then seen exiting the Ford Escape and leaving the area. During the surveillance, I personally observed HOUSE exit and reenter the Ford Escape while it was parked in the driveway at 1010 Angier Drive.

15. Law enforcement followed CS-1 to a neutral location and collected a bag of suspected narcotics from CS-1. CS-1 told law enforcement that HOUSE had the bag of suspected narcotics inside the Ford Escape and sold it to CS-1 while CS-1 was inside the Ford Escape. The bag was later submitted to the MVRCL for analysis and found to contain around 56.64 grams of a substance containing fentanyl, cocaine, and fluoroisobutyrylfentanyl.

16. Law enforcement also followed HOUSE when he left 1010 Angier Drive in the Ford Escape after the late August 2019 controlled purchase. Law enforcement followed HOUSE back to the TARGET RESIDENCE and observed him enter the front door to the residence.

17. After the late August 2019 controlled purchase, law enforcement periodically drove past the addresses associated with HOUSE. On September 5, 2019, law enforcement drove past the TARGET RESIDENCE and observed the Ford Escape parked in the driveway.

18. The next controlled purchase occurred in mid-September 2019. Prior to the controlled purchase, law enforcement conducting surveillance observed the Ford Escape sitting in the driveway at the TARGET RESIDENCE. Law Enforcement observed the Ford Escape pull away from the TARGET RESIDENCE. Law Enforcement maintained surveillance on the Ford

Escape as it traveled directly to the driveway to 1010 Angier Drive. Law Enforcement observed a black male matching the description of HOUSE emerge from the vehicle and go into the residence. Law enforcement subsequently saw CS-1 arrive at 1010 Angier Drive and go into the residence. Law enforcement saw CS-1 leave the residence at 1010 Angier Drive, and CS-1 drove off in the vehicle in which CS-1 had arrived. Sometime thereafter, a black male matching the description of HOUSE departed the area in the Ford Escape. Law Enforcement maintained surveillance on the Ford Escape as it traveled directly to the driveway at the TARGET RESIDENCE. Law Enforcement observed a black male matching the description of HOUSE emerge from the vehicle and go toward the front of the TARGET RESIDENCE.

19. Law enforcement followed CS-1 to a neutral location and collected a bag of suspected narcotics from CS-1. CS-1 told law enforcement that HOUSE sold a bag of suspected narcotics to the CS-1 while inside the residence at 1010 Angier Drive. The bag was later submitted to the MVRCL for analysis and found to contain around 55.55 grams of a substance containing heroin, benzyl fentanyl, fluoroisobutyrylfentanyl, fentanyl, cocaine, and carfentanil.

20. The final controlled purchase was conducted in late October 2019. Prior to the controlled purchase, law enforcement conducting surveillance observed the Ford Escape sitting in the driveway at the TARGET RESIDENCE. Law Enforcement saw HOUSE leave the TARGET RESIDENCE and enter the Ford Escape. Law enforcement saw the Ford Escape pull away. Law Enforcement maintained surveillance on the Ford Escape as it traveled directly to the driveway to at 1010 Angier Drive. Law Enforcement observed HOUSE emerge from the vehicle and go into the residence. Law enforcement subsequently saw CS-1 arrive at 1010 Angier Drive and go into the residence. Law enforcement saw CS-1 leave the residence at 1010 Angier Drive, and CS-1 drove off in the vehicle in which CS-1 had arrived.

21. Law enforcement followed CS-1 to a neutral location and collected a bag of suspected narcotics from CS-1. CS-1 told law enforcement that HOUSE sold the bag of suspected narcotics to CS-1 while inside the residence at 1010 Angier Drive.

22. Based on my training, experience, and participation in other drug investigations; my participation in this investigation; and my discussions with other experienced agents and officers of the DEA and other federal, state, and local law enforcement officers, I have learned:

   a. That narcotics traffickers, such as those who deal in distribution quantities of fentanyl and heroin frequently maintain at their residence, place of business, or other secure premises to which they have access, amounts of fentanyl and heroin and amounts of currency in order to maintain and finance their ongoing narcotics business;

   b. That narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including fentanyl and heroin. Furthermore, I know from experience that the aforementioned books, records, receipts, notes, ledgers, and other documents are generally maintained where the traffickers have ready access to them;

   c. That narcotics traffickers use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners, and money counters to facilitate their criminal activity;

   d. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or place of business, for ready access and to conceal same from law enforcement authorities;

   e. That persons involved in drug trafficking conceal proceeds of drug sales, records of drug transactions, firearms, ammunition, caches of drugs, large amounts of currency, financial instruments, keys to safe deposits boxes, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and/or evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from narcotics trafficking in their residences and in other secure locations, including places of business, in order to conceal them from law enforcement authorities;

f. That narcotics traffickers commonly maintain records of telephone calls in billing statements, addresses or telephone numbers in books or papers which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

g. That traffickers in controlled substances, namely, fentanyl and heroin, commonly keep paraphernalia for the packaging, weighing, processing, and distributing fentanyl and heroin; and that these paraphernalia include but are not limited to scales, plastic bags, baggies, heat sealers, and other utensils used to distribute fentanyl and heroin;

h. That traffickers utilize vehicles to transport and conceal narcotics, and to conduct transactions inside of vehicles, out of the view of the public eye; and

i. That traffickers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales.

## CONCLUSION

39. Based on the information above, I submit that there is probable cause to believe that the specified federal offenses have been committed and that a search of the **TARGET RESIDENCE**, to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located in or on the **TARGET RESIDENCE**, and person of Jovan House will lead to the discovery of the items outlined above (described more fully in Attachment B, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution of controlled substances).

40. I therefore respectfully request that the attached warrant be issued authorizing the search of the **TARGET RESIDENCE**, to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located in or on the **TARGET RESIDENCE**, and the person of HOUSE as further described in Attachment A, relating to distribution of controlled substances.

Respectfully submitted,

_____
Jason Barnes, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on November 1, 2019.

_____
Honorable Sharon L. Ovington
United States Magistrate Judge

11